NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
ELIZABETH R. YANG (Cal. Bar No. 196461)
Assistant United States Attorney
Senior Litigation Counsel
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1785
    Facsimile: (213) 894-2927
    E-mail:    Elizabeth.yang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FAZLIDDIN KURBANOV,<br><br>    Defendant. | No. CR 17-00091-VAP<br><br>GOVERNMENT'S OBJECTIONS TO PSR AND POSITION REGARDING SENTENCING; DECLARATION OF ELIZABETH R. YANG; EXHIBITS<br><br>Hearing Date: June 4, 2018<br>Hearing Time: 9:00 a.m.<br>Location:    Courtroom of the Honorable Virginia A. Phillips |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Elizabeth R. Yang, hereby files its Objections to the Presentence Investigation Report prepared for defendant Fazliddin Kurbanov and its Position regarding Sentencing in this matter.

    The government's position is based upon the attached memorandum of points and authorities, declaration of Elizabeth R. Yang with attached exhibits, the United States Probation Office's Presentence Investigation Report and recommendation letter, the victim impact

statement which will be made orally to the Court at the sentencing hearing, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 14, 2018         Respectfully submitted,

                            NICOLA T. HANNA
                            United States Attorney

                            PATRICK R. FITZGERALD
                            Assistant United States Attorney
                            Chief, National Security Division


                                 */s/ Elizabeth R. Yang*
                            ELIZABETH R. YANG
                            Assistant United States Attorney

                            Attorneys for Plaintiff
                            UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

PAGE

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . 2

III. GOVERNMENT'S OBJECTIONS, CORRECTIONS, AND/OR
     COMMENTS TO THE PRESENTENCE INVESTIGATION REPORT
     PREPARED FOR DEFENDANT . . . . . . . . . . . . . . . . . . . . 5

IV.  SENTENCING ANALYSIS . . . . . . . . . . . . . . . . . . . . . .6

     A.   The Advisory Guidelines Support A 20-Year
          Consecutive Sentence . . . . . . . . . . . . . . . . . . .6

     B.   The 18 U.S.C. § 3553(a) Factors Support A
          Sentence Of 20 Years' Imprisonment To Be
          Served Consecutively And A Lifetime Term
          Of Supervised Release . . . . . . . . . . . . . . . . . . 8

          1.   The need for the sentence imposed to
               reflect the seriousness of the offense,
               promote respect for the law, and provide
               just punishment requires a 20-year
               consecutive sentence . . . . . . . . . . . . . . . . 9

          2.   Defendant's history and characteristics
               support a 20-year consecutive sentence . . . . . . .10

          3.   A 20-year consecutive sentence is necessary
               to provide adequate deterrence to criminal
               conduct and to protect the public . . . . . . . . . 10

          4.   A 20-year consecutive sentence will avoid
               unwarranted sentencing disparities . . . . . . . . .11

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . .12

**TABLE OF AUTHORITIES**

PAGE

**CASES**

United States v. Carty,
    520 F.3d 984 (9th Cir. 2008) (en banc) . . . . . . . . . . . . . . 6

**STATUTES**

18 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . . . . .6

18 U.S.C. § 2332b(g)(5)(B) . . . . . . . . . . . . . . . . . . . .5

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . .passim

18 U.S.C. § 3583(b)(2) . . . . . . . . . . . . . . . . . . . . . .5

18 U.S.C. § 3583(i) . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 3583(j) . . . . . . . . . . . . . . . . . . . . . . . 6

**USSG**

§ 5D1.2(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

§ 5D1.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

§ 5G1.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . .7, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On March 13, 2018, defendant Fazliddin Kurbanov ("defendant") pleaded guilty pursuant to a written plea agreement to Count One of the Indictment, charging him with attempting to murder the then Warden of the Victorville Federal Correctional Institution Medium II, in violation of 18 U.S.C. §§ 1114(3), 1113.[1]  At the time defendant attempted to kill the Warden, he was serving a 25-year sentence for federal terrorism-related convictions out of the District of Idaho.

Undeterred by the lengthy sentence, defendant set about planning the murder of the Warden, including making a shank the week before the attack, testing the shank days before the attack to see if it would set off the metal detector, and purposefully walking to the mess hall with the shank concealed in his shoe, directly approaching the Warden, and attacking the Warden with the shank.  Fortunately, the Warden's quick defensive reflexes thwarted defendant's attempt to slit his throat, but defendant still managed to slash the left side of the Warden's body from armpit to hip bone before being taken down by other staff members.

For this conduct and his resulting conviction, defendant faces an advisory Guidelines sentence as well as a statutory maximum punishment of 20 years' imprisonment.[2]  To account for the premeditated and brutal nature of his crime, the unimaginable pain

---

[1]  Defendant was charged in a three-count Indictment.  (CR 1.)

[2]  In exchange for defendant's agreement to plead guilty to Count One which carries a statutory maximum term of imprisonment of 20 years, the government has agreed to dismiss the remaining two counts at the time of sentencing.  (Plea Agreement (CR 24) ¶ 3.c.)  Those two counts carry an additional combined statutory maximum of 25 years' imprisonment.  (Id. ¶ 3.c. & n.1.)

and ongoing trauma suffered by the victim, and the ongoing danger posed by defendant, the government respectfully submits that a sentence of 20 years' imprisonment to run fully consecutive to the 25-year sentence defendant was serving at the time of the offense is the only appropriate and just sentence in this case.

## II.   RELEVANT FACTS

On January 7, 2016, defendant was sentenced in the District of Idaho to a total term of 25 years' imprisonment following his convictions for conspiracy to provide material support to a designated foreign terrorist organization, attempt to provide material support to a designated foreign terrorist organization, and possession of an unregistered firearm (explosive device).  (PSR ¶ 41.)  He was subsequently designated to the Victorville Federal Correctional Complex in the Central District of California to serve his sentence.

Within weeks of arriving at Victorville, defendant, who believed that he had been wrongly convicted by the federal government, plotted to kill the highest ranking member of the federal government in his presence, Warden C.J. ("the Warden").  (Yang Decl. ¶ 2, Ex. A (translation/transcript of 7/20/16 interview) at Bates Nos. 219-25, 259-60, 303.)  As defendant later admitted to law enforcement, "the many chapter [likely referring to the Koran] say . . . [to] cut off . . . or kind of beat [the Chief]" and "so that's was the point [UI] yeah.  I tried to cut off [the Warden's] head or whatever happened. I, I did best I can."  (Id. at Bates No. 260; see also id. at Bates Nos. 288-89.)  To accomplish his goal, in or around mid-May of 2016, defendant assembled an approximately four-inch shank using two metal razor blades, a piece of wood, and the sticky label from a deodorant

stick.  (Ex. A at Bates Nos. 242-49; Ex. B (photograph of shank); PSR ¶ 16.b.)  Defendant then carried the shank in his shoe to the recreation yard to test whether the metal razor blades in the shank would set off the metal detector.  (Ex. A at Bates No. 254-55; PSR ¶ 16.c.)  When they did not, defendant proceeded with his plan to attack the Warden.

   Recognizing that Monday, May 30, 2016, was a federal holiday, defendant anticipated that the Warden would not be at his usual position -- standing in the dining facility near the serving line at meal time, so he planned his attack for Tuesday.  (Ex. A at Bates No. 253-54.)  The next day, after concealing the shank in his shoe, defendant proceeded undetected through the metal detector to the dining facility.  (Id. at Bates No. 254-55.)  As he passed through the outer door of the dining facility and approached the inner door, he stopped and removed the shank from his shoe and slipped it into his left pocket.  (Id. at Bates No. 255-57.)  Defendant then stood in line, collected a tray, cup, and spoon, and proceeded to the food serving line where the Warden was standing.  (Id. at Bates Nos. 257-58.)  Once he got close to the Warden, defendant approached the Warden from behind, wrapped his right arm around the Warden's neck, and grabbed the Warden's jaw.  (Id. at Bates Nos. 258-59; Ex. C (photograph of area of dining facility area where attack occurred).)  The Warden instinctively raised his hands to protect his throat and turned around in an attempt not to allow defendant to get him in a chokehold.  (PSR ¶¶ 14, 20.a.)  Wielding the shank in his left hand, defendant attempted to bring the shank up to the Warden's neck but another staff member grabbed defendant's left hand.  (Ex. A at Bates No. 259, 261-63.)  As defendant struggled with the other staff

3

member,[3] he tried cutting the Warden wherever he could and ultimately slashed the left side of the Warden's body from armpit to hip bone. (Id. at Bates Nos. 263-64; PSR ¶ 14.)  Approximately 80 staples were needed to close the wound and in the ensuing weeks, the Warden required additional medical attention to stop the bleeding and clean the wound.  (PSR ¶¶ 14, 21.a.)  Although the wound healed, the Warden has a permanent disfiguring scar and suffers from recurring sharp pains caused by nerve damage.  (Id. ¶¶ 14, 21.d.)  In addition to the physical damage, the attack has exacted an emotional toll on the Warden and his family, including his mother who became so distraught upon learning of the attack that she had to be hospitalized.  (Id. ¶¶ 21.e., 22.)[4]

Following the attack, defendant fully confessed to his premeditated attack on the Warden, including his specific targeting of the Warden and his unequivocal intent to kill the Warden by cutting the main vein in his neck.  (Ex. A at Bates Nos. 219, 264-65, 272; PSR ¶ 16.)  Defendant also expressed a desire to plead guilty early in the case (Ex. D (note from defendant)) and ultimately pleaded guilty to Count One.  (See generally Plea Agreement.)  To date, defendant has not, however, expressed any remorse towards the Warden.  (See Ex. A at Bates Nos. 292, 306-308.)  Rather, defendant

---

[3]  Defendant repeatedly refused to comply with staff orders to drop the shank, necessitating staff to physically restrain him and use pepper spray to gain control over him.  (PSR ¶ 15.)  As a result of the struggle, two staff members were also injured.  (Id. ¶ 15, n.1.)  Both staff members have declined to submit a victim impact statement.

[4]  At defendant's sentencing hearing, pursuant to the Crime Victims' Rights Act, the Warden intends to present an oral statement of the impact that the attempt on his life has had on him and his family.

4

has stated that he would only be willing to apologize to the staff members who were injured in the attempt to disarm him since they were not his intended targets.  (Id.)

Post-offense, defendant has continued to make threats of violence against prison staff, stating that he will specifically target and seek to kill any prison staff that served in the U.S. military and/or served in Iraq or Afghanistan.  (Ex. E (report of threats).)  Defendant has also admitted to being homicidal.  (Id.)

### III. GOVERNMENT'S OBJECTIONS, CORRECTIONS, AND/OR COMMENTS TO THE PRESENTENCE INVESTIGATION REPORT PREPARED FOR DEFENDANT

- Post-Offense Conduct:  The PSR does not include any information about the threats of violence against prison staff made by defendant following his arraignment and detention in this case.  (See supra Section II; see also Ex. E.)  The information is not only relevant to the Court's determination of the appropriate sentence to impose in this case, but since a PSR follows an inmate throughout his/her incarceration in the Bureau of Prisons and during supervision by the Probation Office, the government submits that it is vitally important that information about the danger posed by defendant be included.  Accordingly, the government objects to its omission from the PSR.

- Part D. Sentencing Options / Supervised Release (¶¶ 102, 103):  The PSR states that pursuant to 18 U.S.C. § 3583(b)(2) and U.S.S.G. § 5D1.2(a)(2), the statutory term of supervised release for defendant's offense of conviction is "not more than three years" and the Guideline range is "1 year to 3 years."  (PSR ¶¶ 102, 103.)  18 U.S.C. § 3583(j) and U.S.S.G. § 5D1.2(b) provide, however, that if an offense of conviction is listed in 18 U.S.C. § 2332b(g)(5)(B), the

authorized term of supervised release is up to life. See 18 U.S.C. 3583(j) ("any term of years or life"); U.S.S.G. § 5D.2(b)(1) ("may be up to life"). Because 18 U.S.C. § 1114 (defendant's offense of conviction) is a listed offense in 18 U.S.C. § 2332b(g)(5)(B), the Court is not limited to imposing a three-year term of supervised release, but may impose a term up to life.[5] The government therefore requests that this portion of the PSR be corrected.

- Part D. Sentencing Options / Guideline Provisions (¶ 99): The PSR states that the guideline imprisonment range is 360 months to "zero life." The government believes that "zero" should be deleted.

**IV. SENTENCING ANALYSIS**

    **A. The Advisory Guidelines Support A 20-Year Consecutive Sentence**

All sentencing proceedings must begin by calculating correctly the applicable Sentencing Guidelines range. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). The advisory Guidelines are "the starting point and the initial bench mark and are to be kept in mind throughout the process." Id. at 991 (internal quotation and citation marks omitted).

As set forth in the PSR, the Probation Office concurs with the Guidelines calculations agreed to by the parties in the plea agreement.[6] (PSR ¶ 101.) More specifically, the parties and the

---

[5] In the plea agreement, defendant was advised that he faced up to a lifetime period of supervised release. (See Plea Agreement ¶ 4.)

[6] The parties have also agreed not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, and departures relating to the offense level be imposed. (Plea Agreement ¶ 13; PSR ¶ 5.)

6

Probation Office have calculated defendant's total offense level as follows:

| | |
|---|---|
| Base Offense Level: | 33 |
| Permanent Bodily Injury: | +4 |
| Official Victim: | +6 |
| Acceptance of Responsibility: | -3 |
| Total Offense Level: | 40 |

(Plea Agreement ¶ 13; PSR ¶¶ 26-36.) With a Criminal History Category of III (PSR ¶¶ 41-44), absent the statutory maximum for the offense of conviction, the applicable Sentencing Guidelines range would be 360 months to life imprisonment. (Id. ¶ 99.) Given the 20-year statutory maximum for the offense of conviction, however, the applicable Guidelines sentence for defendant is a term of imprisonment of 240 months (20 years) and up to a lifetime period of supervised release. (Id.)

In addition, the Guidelines counsel that if a defendant commits an offense while already serving a term of imprisonment, the sentence for the instant offense "shall be imposed to run consecutively to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(a) (emphasis added). Here, at the time defendant attempted to kill the Warden, he was serving a 25-year prison sentence imposed in United States v. Kurbanov, 13-00120-EJL, District of Idaho ("the District of Idaho case"). (PSR ¶¶ 41, 43.) A 20-year consecutive sentence is thus fully supported by the Guidelines.[7]

---

[7] The parties have agreed that at least 15 years of the 20-year statutory and Guideline term of imprisonment shall run consecutive to the term of imprisonment previously imposed in the District of Idaho case. (Plea Agreement ¶ 15.) The only issue reserved by the parties for argument is whether the remaining 5 years shall run concurrent or consecutive to the District of Idaho sentence. (Id.)

7

**B.     The 18 U.S.C. § 3553(a) Factors Support A Sentence Of 20 Years' Imprisonment To Be Served Consecutively And A Lifetime Term Of Supervised Release**

An analysis of the 18 U.S.C. § 3553(a) factors also fully supports a 20-year consecutive sentence for defendant. As noted above, the Sentencing Commission has determined that a consecutive sentence of 360 months up to life imprisonment is appropriate for defendant's attempt to kill the Warden. Because of the statutory maximum for the offense, however, defendant faces a sentence of 240 months (20 years), which is significantly below the otherwise applicable Guidelines range. It is also significantly below the 45-year statutory maximum sentence that defendant could have received if   he had been convicted on all three counts in the Indictment.

Nonetheless, the government submits that a 20-year consecutive sentence is the appropriate sentence in this case because although the seriousness of the offense and the danger defendant poses cannot be overstated, defendant voluntarily met with and fully admitted his criminal conduct to law enforcement, expressed the desire to plead guilty early in the case, sparing the victim the further trauma of having to publicly re-live the attempt on his life, and ultimately accepted responsibility for his conduct by pleading guilty. In its recommended sentence, and agreement to dismiss the remaining counts at sentencing, the government has accounted for these facts, along with other personal mitigating factors set forth in the PSR.

Accordingly, consistent with the Probation Office's recommendation, the government submits that a sentence of 240 months' imprisonment to be served consecutively to the sentence imposed in

8

the District of Idaho case and a lifetime term of supervised release[8] is necessary to effectuate the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

        **1. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment requires a 20-year consecutive sentence**

As the Probation Office succinctly notes, the seriousness of defendant's offense "cannot be overstated" -- defendant committed "a heinous, premeditated attack on the warden at a federal prison," "has proven to be a danger to all prison staff and individuals in authority," and "lacks any respect for the law or the value of human life." (Rec. Ltr. at 5-6.) Not only did defendant viciously attack the Warden, but he did so during a busy meal service endangering the lives and safety of other staff members and inmates. He also did not submit to staff commands and while still armed with the shank, viciously resisted being restrained, resulting in injuries to two other staff members. That he tried to kill the Warden while already serving a substantial prison sentence compounds the seriousness of defendant's crime and confirms his utter lack of respect for the law. A 20-year consecutive sentence is required.

---

[8] The government recognizes that defendant may be subject to deportation following completion of service of his terms of imprisonment. (PSR ¶¶ 60, n.3, 104.) However, given the uncertainty of the deportation process, defendant's violent criminal history and mental health issues, and the ongoing danger he poses to persons in positions of authority and the public, the government respectfully submits that defendant should be subject to supervision for the remainder of his natural life should he remain in the United States.

9

### 2. Defendant's history and characteristics support a 20-year consecutive sentence

Although defendant relates that he had "a normal childhood," the Probation Office characterizes defendant's upbringing as "chaotic." (PSR ¶ 54; Rec. Ltr. at 6.)  Defendant also reports suffering from mental health issues.  (PSR ¶¶ 71-75.)  As the Probation Office notes, however, despite being sympathetic to his upbringing and recognizing his mental health struggles, defendant has demonstrated that he is "a violent individual who lacks respect for human life." (Rec. Ltr. at 6.)  This is confirmed by defendant himself who has expressed no regret or remorse for his vicious attack on the Warden and continues to threaten violence against prison staff.  This inability to control his violent impulses and adequately adapt his behavior confirm that defendant is a poor candidate for successful rehabilitation and demonstrates that he poses an unacceptably high risk of danger to the community and law enforcement.

### 3. A 20-year consecutive sentence is necessary to provide adequate deterrence to criminal conduct and to protect the public

It is abundantly clear that a 25-year prison sentence has done nothing to deter defendant from committing further violent crimes. It is equally clear that there is an unquestionable need to protect the public from further criminal conduct by defendant.  From his prior convictions to his recent threats to prison staff, defendant has demonstrated a disturbing willingness to engage in acts of violence with little to no provocation.  By his actions, defendant has plainly demonstrated that he cannot conform his behavior with societal requirements and should therefore be incarcerated for a sufficiently lengthy period to protect the public from the additional

violent crimes that defendant has demonstrated a ready willingness and ability to commit. Simply stated, defendant is an extremely violent individual who the Bureau of Prisons will be forced to watch very carefully throughout his terms of incarceration due to the continuing threat he poses to prison staff and others, and the public should be protected from such an individual for as long as possible.

Moreover, the need to deter other inmates from committing acts of violence while in prison is incredibly important. The need is particularly acute where, as here, defendant targeted the Warden simply because of his status and took advantage of the Warden's desire to be more accessible to inmates to viciously attack him. Under such circumstances, a less than 20-year consecutive sentence -- the maximum under the law -- would send a message to other inmates that such heinous conduct will not be severely punished.

### 4. A 20-year consecutive sentence will avoid unwarranted sentencing disparities

The application of the statutory maximum penalty limitation of 20 years reduces the Guidelines term to 240 months (20 years). (PSR ¶ 99.) This sentence is significantly below the otherwise applicable Guidelines range of 360 months to life in prison as well as the 45-year statutory maximum sentence defendant would have faced if Counts Two and Three were not to be dismissed pursuant to the plea agreement. (Id.; Plea Agreement ¶ 3.c.) Nonetheless, this reduction in defendant's likely sentence is not unwarranted for the reasons discussed above. Particularly given the effect of the plea agreement on defendant's possible sentence and ultimate Guidelines range, the government concurs with the Probation Office's assessment that there

11

are no identified factors warranting a departure or variance from the recommended 20-year consecutive sentence.  (PSR ¶¶ 113, 114.)

Accordingly, a 20-year consecutive sentence is sufficient but not greater than necessary to achieve the objectives set forth in 18 U.S.C. § 3553(a).

## V.   CONCLUSION

Recognizing that the ultimate decision as to the appropriate sentence for defendant clearly rests with the Court, the parties have agreed that the statutory maximum of 20 years' imprisonment is an appropriate disposition in this case.  (Plea Agreement ¶ 15.)  The only issue reserved by the parties for argument is whether all 20 years or only 15 years should run consecutive to the District of Idaho sentence.  (Id.)  For the reasons set forth above, as well as the advisory Guidelines which counsel that the sentence "shall be imposed to run consecutively to the undischarged term of imprisonment," U.S.S.G. § 5G1.3(a), the government respectfully requests that the Court impose a sentence of 20 years' imprisonment to run fully consecutive to the 25-year term of imprisonment previously imposed in the District of Idaho case, to be followed by a lifetime term of supervised release.  The government respectfully submits that such a sentence is reasonable and appropriate, and is sufficient, but not greater than necessary, to achieve the sentencing goals of 18 U.S.C. § 3553(a).